Louise HINES, joined by her husband, Richard Hines, Plaintiffs-Appellants,

v.

DELTA AIR LINES, INC., et al., Defendants-Appellees.

Surretter HINES, joined by her father and next friend, Richard Hines, and Richard Hines, Individually, Plaintiffs-Appellants,

v.

DELTA AIR LINES, INC., et al., Defendants-Appellees.

No. 30395

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

March 13, 1972.

* ▮ Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409.

Horace E. Hill, Daytona Beach, Fla., for plaintiffs-appellants.

James E. Hodge, Jones, Foerster & Hodge, Jacksonville, Fla., for Delta Air Lines, Inc.

Bernard H. Strasser, Green & Strasser, P. A., Daytona Beach, Fla., for Eastern Air Lines, Inc.

Philip A. Webb, III, Jacksonville, Fla., for Florida Air Lines.

Before JOHN R. BROWN, Chief Judge, and INGRAHAM and RONEY, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Like the American space program, this case struggled through a long tortuous and frustrating history before getting off the ground. The first complaint was filed on March 4, 1969. Four amended complaints have followed and yet the case was still no nearer final resolution on the merits before now than it was nearly three years ago, since each of the subsequent amended complaints was dismissed on the pleadings. This appeal

is from dismissal of the Fourth Amended complaint and from the District Court's denial of a Motion for New Trial and Rehearing. Believing that the plaintiff has stated a cognizable claim and properly—though haphazardly— joined all parties, we vacate and remand, so that it can be determined whether there is sufficient thrust to orbit a pleaded claim in a universe of facts.

Looking at the papers of the case through *Conley* [1] glasses, this much at least is revealed. In March, 1968, Louise Hines telephoned a ticket agent (either Delta Air Lines or Eastern Air Lines—she claims Delta, Delta claims Eastern) requesting air transportation from Birmingham, Alabama to Ocala, Florida.[2] She explained to the ticket agent that she was blind and paraplegic and would need assistance in traveling. The ticket agent informed her that she would be flying Delta out of Birmingham, with stop-overs in Atlanta and Jacksonville, told her the flight time and the time of arrival in Ocala, and assured her that she would be assisted along the way. A few days later, an Eastern Air Lines ticket arrived in the mail, showing passage from Birmingham to Jacksonville via Delta and then transfer to Florida Air Lines for the last leg of the journey to Ocala.

On the day of the trip, Mrs. Hines and her 14-year-old daughter who had never flown before, were escorted onto a flight in Birmingham by someone, presumably an air lines employee. She was probably on Delta at the time. When the flight arrived in Jacksonville, somebody escorted her off the plane and then, about 20 minutes later, somebody else helped her reboard for the final leg of the journey to Ocala, presumably on a Florida Air Lines flight. During this part of the flight, the door of the plane blew open, producing violent conditions

1. Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80.

2. Mrs. Hines is a Negro gospel singer whose records include "I Got Jesus," "That's Enough," "Show Some Signs" and "Glory Hallelujah." She was going to Ocala to fulfill a singing engagement.

aboard the aircraft which proximately caused Plaintiff serious injury.[3]

■ Litigation commenced on April 4, 1969. The complaint filed that day (No. 69–232) named Delta Air Lines as the Defendant[4] and charged that Delta employees had negligently boarded Mrs. Hines and her daughter on a plane which was not fit for air travel. On June 10, 1969, before Delta had filed any responsive pleading, but substantially after the 20 days allowed by F.R.Civ. P. 12(a) to file such an answer or motion, the complaint in No. 69–232 was amended to clarify Plaintiff's theory that Delta had breached its duty—either in contract[5] or in tort[6]—to furnish Plaintiff with safe or at least negligence free air passage to Ocala. On the same day, Mrs. Hines' husband and daughter instituted suit (No. 69–381) arising out of the same mid-air event claiming that (i) the daughter had also suffered injuries and (ii) that the husband (father) had thereby "lost services of his daughter" and "is obliged to pay medical expenses incurred."[7] Delta did not respond to either suit within the time allowed by the Rules, but did file, on October 3, 1969, its first matched pair of Motions to Dismiss for Failure to State a Claim on Which Relief Court Be Granted.[8] In identical unrevealing unilllumined cryptic orders, the District Court dismissed the complaints without assignment of reason on November 18, 1969, but with leave to amend by November 26, 1969.

On November 24, 1969, after Delta had taken several depositions, a second amended complaint was filed in each suit,[9] naming only Delta as the defendant, and these were answered solely by another pair of motions to dismiss for failure to state a claim, filed by Delta on December 8, 1969 together with simultaneously filed Motions to Strike various parts of the complaints. Subsquently,[10] Plaintiff filed papers styled "Motion to Legally File Complaint" in both suits, naming both Delta and Eastern Air Lines in the caption as defendants. Thereafter, on December 31, 1969, Third Amended Complaints[11] were filed in each case naming Delta and Eastern as defendants in the caption. Again Delta chose to answer only with motions to dismiss for failure to state a claim (filed December 31, 1969), and on January 15, 1970, these motions were granted as to Delta with leave to amend through February 4, 1970. Meanwhile, on January 30, 1970, Eastern got into the act by filing its own un-

3. So far nothing suggests that Mrs. Hines is a malingerer since in her pretrial discovery deposition she explained, "I'm blind but I don't never go to a doctor for nothing but a baby."

4. Castle in the Skies, Inc. was also named as a Defendant in the original complaint, but was dismissed from the suit at the outset when it was learned that Mrs. Hines was not aboard one of its flights.

5. This theory is that through the actions of the ticketing agent Delta had contracted with Mrs. Hines to transport her to Ocala safely, with knowledge that her handicap status required extraordinary care, which the agent contractually promised to provide.

6. This theory includes a reliance element and some "Good Samaritan" law, in that it claims that once Defendant had undertaken to transport Plaintiff safely, with knowledge that because of her condition she would be relying on Defendant, Delta could not then abandon the responsibility, at least not without giving Plaintiff actual notice that it was doing so.

7. This second suit (No. 69–381) proceeded on complaints, amended complaints, motions and orders essentially identical to those filed in the original suit (No. 69–232) except as explained above.

8. F.R.Civ.P. 12(b) (6). Delta also cites F.R.Civ.P. 8(a) in its memoranda in support of its motions to dismiss, but 12(b) is the statutory authority for this type of dismissal.

9. Actually this was the first amended complaint in 69–381 and the second amended complaint in 69–232.

10. December 29, 1969, in 69–232 and December 31, 1969, in 69–381.

11. Actually, this was the third amended complaint in 69–232 and the second amended complaint in 69–381.

punctual motions to dismiss the complaint against them for failure to state a claim.

On February 6, 1970, Plaintiff filed five separate documents—(i) a "Fourth Amended Complaint" in No. 69–232 served only on Delta and naming only Delta as a Defendant in the caption, but naming Delta, Eastern and Florida Air Lines as Defendants in the body of the complaint, (ii) a "Fourth Amended Complaint" in No. 69–232 served only on Eastern and naming only Eastern as a Defendant in the caption, but naming Delta, Eastern and Florida as Defendants in the body of the complaint, (iii) a "Fourth Amended Complaint" in No. 69–232 served only on Florida and naming only Florida as a Defendant in the caption, but naming Delta, Eastern and Florida as Defendants in the body of the complaint, (iv) a "Fourth Amended Complaint" in No. 69–381 served only on Delta and naming only Delta as a Defendant in the caption, but naming Delta, Eastern and Florida as Defendants in the body of the complaint, and (v) a "Fourth Amended Complaint" in No. 69–381 served only on Eastern and naming only Eastern as a Defendant in the caption, but naming Delta, Eastern and Florida as Defendants in the body of the complaint. As if that were not enough, on February 10, 1970, Plaintiff filed another "Fourth Amended Complaint" in No. 69–381 (but not in No. 69–232) naming all three Defendants as Defendants in both the caption and the body of the complaint and served on all parties.

Delta responded to this pleading on February 11, 1970, by motions to dismiss with prejudice for (a) late filing and (b) failure to state a claim. Florida Air Lines answered—late (March 30, 1970)—in No. 69–232 only, by filing its motion to dismiss for (a) late filing, (b) failure to obtain a Court order to join an additional party (F.R.Civ.P. 21) and (c) failure to state a claim. This motion was filed well beyond the 20-day period allowed by the Rules to answer a complaint. Meanwhile, Eastern, with the apparent acquiescence of the District Court (see footnote 12, *infra*), stood on its earlier motions of January 30, 1970 to dismiss for failure to state a claim.

On April 20, 1970, in documents naming Delta and Eastern, but not Florida, in the caption, the District Court dismissed the multiple "Fourth Amended Complaints." [12]

Plaintiff filed "Motions for New Trial and/or Rehearing" which were denied by the District Court without assignment of reasons on June 29, 1970. This consolidated appeal followed.

It is evident to this Court at this point that this case has been needlessly complicated by general mishandling. Plaintiff's counsel's lack of familiarity with Federal procedure is painfully apparent and witnessed by such eccentric practices as the filing of a heretofore unknown "Motion to Legally File Complaint," and by the wholly unnecessary and confusing structuring of the case into two separate cases with separate papers presented against each of the three airline defendants. Delta is not free from fault. It has failed to comply with Rule 12(a) prescribing time limits for answering a complaint [13] and

---

12. ORDER
"This cause having come on to be heard upon the Motions to Dismiss the Fourth Amended Complaint filed by Defendants, Delta Air Lines, Inc., Eastern Air Lines, Inc. and Florida Air Lines, Inc., it is
ORDERED
That the Fourth Amended Complaint be and the same is hereby dismissed.
DONE AND ORDERED at Jacksonville, Duval County, Florida, this 20 day of April, A.D.1970."

This was the order in No. 69–232. The order in No. 69–381 was identical with the important exception that unlike No. 69–232, it did *not* mention Florida Air Lines.
Under F.R.Civ.P. Rule 41(b) this order had the effect of dismissal with prejudice.

13. Of course, the twenty day requirements of Rule 12(a) are applicable through Rule 12(h)(2) and Rule 7(a). Though admittedly late filing did not waive the Rule 12(b)(6) defense, it should have been apparent to all defendants that the Rules require some response within twenty days.

it is difficult to comprehend its continued insistence that the complaints failed to state a cause of action because they did not allege such precise factual details as the exact mid-air location of the accident or the make, model and identification number of the aircraft involved. Apparently Delta was merely oblivious to the well-established rule of Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80, that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. at 45–46, 78 S. Ct. at 102. Instead, Delta's sole authority cited in each of its very brief and virtually identical "briefs" in support of its consecutive motions to dismiss is one repeated incantation excerpted from 8 Am.Jur.2d.

Eastern's lone Motion to Dismiss of January 30, 1970, was equally without merit because of its failure to recognize the Conley rule, to say nothing of its timing. The same is true of Florida Air Lines and its insistence that a claim that its aircraft was apparently so unfit that the door flew open during mid-flight causing injury to a passenger does not state a claim upon which relief could be awarded.

All the while the District Court was perhaps unwittingly adding to the frustrations. Dismissals cannot be sustained under Conley for factual inadequacies, and yet the Judge's unrevealing orders must have encouraged each defendant to believe the Court would hold all complaints inadequate.

Amid this confusion, this much is clear. If the allegations of the complaint are true, Eastern Air Lines (or Delta) either contracted or at least undertook to assist the blind, paraplegic plaintiff in obtaining safe carriage aboard a reasonably fit airplane from Birmingham to Ocala, with full knowledge of the conditions which would require the plaintiff to rely on Eastern and Delta to faithfully execute this duty.

Delta Air Lines, either expressly or by implication undertook the same responsibilities. Delta, Eastern or both of them also undertook by a through booking to have Florida Air Lines fly plaintiff from Jacksonville to Ocala in a reasonably fit aircraft, free from negligence of its crew. Somewhere during that last leg of the journey, the door of the plane flew open causing severe injury to plaintiff. If these allegations are true—and that is what discovery, pre-trial and trial are to determine—plaintiff is entitled to recover from one or more of the defendants.

■■ This Court is convinced that as the case now stands, the complaints should not have been dismissed against any of the defendants. If the dismissals were predicated upon a theory that the complaints failed to state a claim, that theory is erroneous under Conley and the theories of liability discussed above. If the dismissals were on procedural grounds (such as F.R.Civ.P. 21), they cannot be supported. If technically there was no order formally granting "leave" to add Eastern as a party, Eastern ignored the technicality in its one pleading which relied exclusively on an ill-conceived notion that the complaint had not set forth a claim cognizable against them. Delta cannot possibly sustain dismissal which aborts the case on an unjustly stringent procedural argument that one amended complaint was filed two days after the limited time prescribed. And there is simply no basis for denying the right to make Florida a new party, particularly in view of the affirmative statutory mandate of Rule 15(a) that "leave shall be freely given when justice so requires." Thus, dismissal of any of the parties on any of the procedural grounds asserted would constitute clear abuse of discretion. Foman v. Davis, 1962, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222; Lone Star Motor Import, Inc. v. Citroen Cars Corp., 5 Cir., 1961, 288 F.2d 69; Longbottom v. Swaby, 5 Cir., 1968, 397 F.2d 45.

■ But to reverse and remand would still leave this case in an entangled condition. Therefore, pursuant to 28 U.S.C.A. § 2106,[14] we hereby vacate the order of dismissal and remand to the District Court. The District Court shall allow Plaintiff to file a further Amended Complaint within a fixed, but reasonable time (e. g., 20 days). There appears to be no reason why the cases are not consolidated as to all plaintiffs and all defendants on all theories asserted for joint or several liability. Since none of the defendants has a basis for dismissal, it is not likely that any question now raised will pose any Statute of Limitations problem. However, should such an issue arise as to any particular defendant, it will be disposed of under the policies of F.R.Civ.P. 15(c). See, Williams v. United States, 5 Cir., 1968, 405 F.2d 234.

So now, four years after the occurrence and three years after commencement of abortive efforts to set the judicial machinery in motion to determine whether there is a factual basis for what the lawyers have inartfully been saying took place, the case goes back for its first beginning. We would caution again that we do not forecast necessarily a full blown trial, or that on properly developed *facts*, the case may even survive summary judgment or motion for directed verdict. See, Tyler v. Peel, 5

Cir., 1967, 371 F.2d 788; Cook & Nichol, Inc. v. The Plimsoll Club, 5 Cir., 1971, 451 F.2d 505. What we hold is that at this juncture, in this way, the Hines'—no less than Mrs. Surowitz[15]— are not to be cut off at the pass. They are not to be deprived from utilizing the tools of Federal Rules to try to establish a claim warranting recovery.

Vacated and remanded.

14. "The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances."

15. In this context, what was said for Mrs. Surowitz in the words of Justice Black is particularly appropriate for the Hines'. "The basic purpose of the Federal Rules is to administer justice through fair trials, not through summary dismissals as necessary as they may be on occasion. These rules were designed in large part to get away from some of the old procedural booby traps which common-

law pleaders could set to prevent unsophisticated litigants from ever having their day in court. If rules of procedure work as they should in an honest and fair judicial system, they not only permit, but should as nearly as possible guarantee that bona fide complaints be carried to an adjudication on the merits. Rule 23(b), like the other civil rules, was written to further, not defeat the ends of justice. * * * The dismissal of this case was error. It has now been practically three years since the complaint was filed and as yet none of the defendants have even been compelled to admit or deny the wrongdoings charged. They should be."
Surowitz v. Hilton Hotels Corp., 1966, 383 U.S. 363, 373–374, 86 S.Ct. 845, 851, 15 L.Ed.2d 807, 814.